UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-80068-CR-ROSENBERG(s)

UNITED STATES OF AMERICA,

vs.

JAIME NICOLE LEWIS,

        Defendants,
_____/



## PLEA AGREEMENT

The United States of America and JAIME NICOLE LEWIS (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count one of the superseding indictment. Count one of the superseding indictment charges the defendant with conspiracy to import alpha-PVP("α-PVP"), also known as "Flakka" into the United States from a place outside thereof, a controlled substance, in violation of 21 U.S.C. § 960(b) and 963.

2. The defendant is aware that the sentence will be imposed by the court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the

1

applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered.  The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines.  The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

## MAXIMUM PENALTIES

3.  The defendant also understands and acknowledges that as to Count one the court may impose a statutory maximum term of imprisonment of up to 20 years, followed by a term of supervised release of at least 3 years if the defendant does not have a prior conviction for a felony drug offense which has become final or at least 6 years if

the defendant has a prior conviction for a felony drug offense which has become final. The court may impose a maximum term of supervised release of up to life. In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $1,000,000.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

## FACTUAL BASIS

5. If the case went to trial, the United States would prove, beyond a reasonable doubt, the following facts, as well as others:

In March of 2015, as a part of an ongoing investigation regarding the illegal drug trafficking of 4-Methyl-N-Ethylcathinone, a/k/a "4-MEC," Methylone, and powdered MDMA, a/k/a "Molly" and synthetic cathinones, specifically Alpha-pyrrolidinopentiophenone ("α-PVP"), aka "Flakka," agents from the Drug Enforcement Administration received information about suspected narcotics packages being delivered to Palm Beach County. DEA Agents in London, England received information from the British authorities on multiple packages that were intercepted coming from a chemical company in Hong Kong, China. The Chinese based chemical

company has been utilizing Aramex Shipping Company to transport chemicals to buyers in the United States. The British authorities found approximately seven packages that contained a white crystallized substance which tested positive for the presence of α-PVP, commonly referred to as "Flakka." DEA London provided West Palm Beach (WPB) agents with the address information from the packages and forwarded the packages to WPB agents. The WPB agents dressed as a DHL employee delivered the package to the address listed on the package, 10309 Allegro Drive. BULLY answered the door and took possession of the package.

Approximately fifteen minutes after the package was delivered to BULLY, agents observed BULLY driving away from the residence in a black Audi that was previously parked in the driveway of 10309 Allegro Drive. A traffic stop was conducted on the vehicle and the driver of the vehicle identified himself as Calvin BULLY. In the car agents found approximately $8,000 US Currency wrapped in rubber bands. Agents later discovered that Calvin Bully was Kevin BULLY's brother. Kevin BULLY had been using Calvin BULLY's identity. BULLY gave agents his house key and gave agents written consent to search his residence. Upon search of the residence and interview of BULLY, agents located three cell phones and a personal computer, approximately $60,000 US Currency wrapped in rubber bands, marijuana, a white substance believed to be utilized as "cut" or an additive to narcotics, a handgun and loaded magazine, and an

empty DHL shipping bag from the same company previously identified on the seized packages containing α-PVP.

Agents questioned BULLY about Jamie LEWIS because her name was on the delivered package. BULLY claimed that LEWIS was an ex-girlfriend. BULLY gave the agents verbal consent to search his iPhone and he gave them the password to unlock the iPhone. Agents found text messages contained within the iPhone regarding the shipment of packages. One such thread was between BULLY and a female with the contact name "MARSHA" on March 26, 2015. In this text message thread, BULLY instructed MARSHA to write "return to sender" on a package of Flakka that was going to be delivered later that day. BULLY explained that you cannot write "return to sender" on the package until after the delivery people leave or they will take the package back. One of the narcotics packages seized by London DEA was addressed to a Marsha Destin located at 250 W. Sample Road, Apt A118, Pompano Beach, FL 33064. This address was also saved in a photo found on the iPhone. A query of a public records database revealed that a Marsha DESTIN is listed as the utilities customer of that address.

When agents retrieved the sham package from the residence, agents found that "return to sender" had been written in black marker on the package. Agents are aware that many drug traffickers write "return to sender" on packages so that they can claim they had no ownership of the package if later asked by law enforcement.

On April 8, 2015, the United States obtained a search warrant from the court in Case No.: 15-8200-WM to search BULLY's iPhone. On or about April 10, 2015, law enforcement conducted a forensic examination of BULLY's iPhone. On April 10, 2015, law enforcement discovered a series of instant messages between Kevin BULLY and Jaime LEWIS on BULLY's iPhone. In one particular thread on March 18, 2015, the following conversation occurred between BULLY and LEWIS where BULLY directed LEWIS to go to a residence to wait for a package of Flakka or $\alpha$-PVP to arrive. BULLY told LEWIS that the package would be under the name "Calvin Lee" which is consistent with an empty Aramax package that was recovered from BULLY's residence on March 26, 2015. When BULLY told LEWIS that the package would be from Aramax, LEWIS indicated she already knew who it was coming from. BULLY continued to give LEWIS instructions and asked her about how the delivery person handed her the package and she commented that she didn't appreciate being treated as if she did not know what she was doing. Independent interviews of BULLY and Lewis both confirm that Lewis would watch Bully's funds and when requested, would advise BULLY how much money he has spent.

On April 9, 2015, agents were alerted by the DEA Hong Kong Office about additional suspected $\alpha$-PVP packages being shipped through Aramax to the United States. One of the packages was addressed to Nicole Lewis located at 4444 Maurice

6

Drive, Delray Beach, FL 33445. The phone number associated with the package was (561) 409-7027, LEWIS' phone number. Agents are aware that "Nicole" is LEWIS' middle name. That package was later seized by DEA agents. Contained within the package was approximately three kilograms of a white crystallized substance. That substance was field tested and yielded a positive result for the presence of α-PVP, a synthetic cathinone.

In subsequent statements, LEWIS stated BULLY has been selling various narcotics since she first met him five years ago. LEWIS stated BULLY started buying Flakka in the beginning of this year (2015) from unknown websites. BULLY would give LEWIS cash to be deposited at which point BULLY would purchase bitcoins to be used to order the narcotics. BULLY ordered from one website called Silk Road, but then changed to another when Silk Road was shut down. LEWIS further stated BULLY would use the names of people he trusted to address the packages to and then notify the person that he was having a package addressed to them. LEWIS stated that BULLY would direct the package recipients to stay home and wait for delivery.

LEWIS also stated that while she did not know who BULLY sold the flakka to, she understood he was selling it in Broward County. She believed that BULLY may have repackaged the flakka since he had different cut at his house along with a heat sealer for plastic baggies.

Based on BULLY's course of conduct, LEWIS knowingly and willfully agreed to receive a package which she knew to be flakka on behalf of BULLY, and that she had agreed to assist BULLY in this regard.

Most of the events that occurred in the importation and distribution of the Flakka occurred in Palm Beach County, within the Southern District of Florida.

6. The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. The United States, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is

8

found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The defendant agrees that she shall cooperate fully with this Office by: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other Court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and (c) if requested by this Office, working in an undercover role under the supervision of, and in compliance with, law enforcement officers and agents. In addition, the defendant agrees that she will not protect any person or entity through false information or omission, that she will not falsely implicate any person or entity, and that she will not commit any further crimes.

8. This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the

investigation or prosecution of other criminal matters as to warrant the Court=s downward departure from the advisory sentencing range calculated under the Sentencing Guidelines and/or any applicable minimum mandatory sentence, this Office may make a motion prior to sentencing pursuant to Section 5K1.1 of the Sentencing Guidelines and/or Title 18, United States Code, Section 3553(e), or subsequent to sentencing pursuant to Rule 35 of the Federal Rules of Criminal Procedure, informing the Court that the defendant has provided substantial assistance and recommending that the defendant's sentence be reduced. The defendant understands and agrees, however, that nothing in this agreement requires this Office to file any such motions, and that this Office's assessment of the quality and significance of the defendant=s cooperation shall be binding as it relates to the appropriateness of this Office=s filing or non-filing of a motion to reduce sentence.

9. The defendant understands and acknowledges that the Court is under no obligation to grant a motion for reduction of sentence filed by the government. In addition, the defendant further understands and acknowledges that the Court is under no obligation of any type to reduce the defendant's sentence because of the defendant=s cooperation.

## APPEAL WAIVER

10. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

11. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all

11

facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

12. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his/her plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

## FORFEITURE

Defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title and interest to any assets or their substitutes which are subject to forfeiture pursuant to Title 21, United States Code, Section 853, and pursuant to Title 28, United States Code, Section 2461 and Title 18, United States Code, Section 924(d)(1) including the following:

a. $8,725 in United States currency.

b. $60,000 in United States currency.

c. One Glock Model 27 .40 caliber semiautomatic pistol.

The defendant agrees that the currency represents proceeds constituting or derived from the unlawful drug activity charged in Count 1 to which the defendant is pleading, or the currency and firearm were used or intended to be used to facilitate the unlawful drug activity charged in Count 1 to which the defendant is pleading.

The defendant agrees that the Glock Model 27 .40 caliber semiautomatic pistol represents a firearm involved in or used in a violation of Count 1 to which the defendant is pleading.

Defendant further agrees to fully cooperate and assist the Government in the forfeiture of the listed asset and to take whatever steps are necessary to pass clear title to the United States, including, but not limited to, execution of a consent to forfeiture or

other documents as may be needed to fully accomplish the forfeiture. Defendant further knowingly and voluntarily waives the following rights as to the assets subject to forfeiture: (1) all constitutional, legal and equitable defenses to the forfeiture of the assets in any judicial or administrative proceeding; (2) any judicial or administrative notice of forfeiture and related deadlines; (3) any jeopardy defense or claim of double jeopardy, whether constitutional or statutory; (4) any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of these assets by the United States; and (5) any right to appeal any order of forfeiture entered by the Court pursuant to this plea agreement. Defendant further understands that the forfeiture of these assets shall not be treated as satisfaction or offset against any fine, restitution, cost of imprisonment, or any other penalty this court may impose on the defendant.

13.   This is the entire agreement and understanding between the United States

and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 9/21/15

By: _____
LOTHROP MORRIS
ASSISTANT U. S. ATTORNEY

Date: 9/21/15

By: _____
MICHAEL SALNICK
ATTORNEY FOR DEFENDANT

Date: 9/21/15

By: _____
JAIME NICOLE LEWIS
DEFENDANT